(No. 20650.—

ALLEN G. MILLS, Appellant, *vs.* THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellee.

*Opinion filed October 23, 1931.*

504

LORIN C. COLLINS, and BEVERLY W. HOWE, for appellant.

GEORGE A. BASTA, IRVIN ROOKS, and ELI E. FINK, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Allen G. Mills conveyed eighty-five acres of land which he owned in Cook county to the Forest Preserve District of Cook county on April 5, 1924, for a consideration of $55,889.12, which was paid him. On June 6, 1928, he filed a bill in the circuit court of Cook county against the grantee, tendering back the purchase money which he had received and praying for a re-conveyance of the land to him. Upon a hearing the court dismissed the bill, and the complainant has appealed.

The appellee is a municipal corporation organized under the act of June 27, 1913, "to provide for the creation and management of forest preserve districts and repealing certain acts therein named." (Laws of 1913, p. 385.) The only act repealed was a former act for the creation of forest preserve districts which was held unconstitutional at the December term, 1911, in *People* v. *Rinaker,* 252 Ill. 266. Another section (8a) was added to the act in 1917, (Laws of 1917, p. 529,) and several of the sections were amended in 1923. (Laws of 1923, p. 409.)

On February 7, 1921, the forest preserve district passed an ordinance purporting to create a forest preserve district

of certain real estate in Cook county which included the complainant's land. The ordinance directed the real estate agent of the district to negotiate with the owners of the land for its purchase, and in case an agreement could not be reached upon the compensation to be paid, the attorney of the district was directed to proceed to obtain title to the land under the eminent domain laws of the State. The land in question did not contain a natural forest or part thereof, or land connecting such forests, as required by section 6 of the Forest Preserve act, but was swamp or marsh land subject to overflow, and during the spring and autumn was covered with water to a depth of one to three feet or more and was part of a large area known as the Skokie marsh. The bill alleged that the defendant threatened to commence condemnation proceedings and try the suit when said land would be covered with water and could not be viewed by a jury except by boat; that the complainant and defendant were not on an equal basis, as the defendant had the power of eminent domain and the right to commence condemnation at such time as it might select and to cause the suit to be brought to trial at such time as it might select, and the complainant would have been subjected to great risk by refusing to accept the offer made by the defendant as the purchase price of the land; that if the land had been viewed by a jury at the most unfavorable time and under most unfavorable conditions a verdict fixing the value of the land at no more than ten per cent of its value might reasonably have been expected; that the ordinance was void, and the defendant had no power, under the law, to purchase or condemn the land and acquired no title by the deed of the complainant; that the complainant was unwilling to sell his land to the defendant but was compelled to do so at the price which the defendant was willing to pay or to subject himself to the risk of a jury trial under unfavorable conditions; that the defendant tried for a long time to prevent the complainant and other own-

ers of land in the same situation from draining it, for the purpose of acquiring it for less than its actual value; that these acts were unlawful and deprived the complainant of his lawful right to hold or convey his land without interference or domination by the defendant; that the passage of the ordinance was sufficient, of itself, to eliminate all possible purchasers, and thereby the complainant was compelled to choose between the alternatives of accepting what the defendant was willing to pay or risking a condemnation proceeding, and that his deed was not voluntary but was made under constraint, in view of the danger of loss that might be sustained by submitting to an appraisement of value by a jury in the condemnation suit. It was further alleged that on November 26, 1923, a tax-payer's suit was brought against the defendant in the superior court of Cook county, which was dismissed by the court for want of equity, but that upon appeal this court on October 22, 1927, reversed the decree and remanded the cause to the superior court, with directions to enter a decree enjoining the defendant from further acquiring the land described in the ordinances of February 7, 1921, and February 2, 1925, by the expenditure of any public money, except such parcels of that land as might be acquired in conformity with section 6 of the Forest Preserve act as construed in the opinion of the court; (*Washburn* v. *Forest Preserve District,* 327 Ill. 479;) that a mandate was issued from this court and a final decree was entered by the superior court in accordance with its directions. The bill then alleges that the decision of the Supreme Court, the final decree of the superior court of Cook county and the acts of the defendant created by operation of law a constructive trust, of which the land of the complainant is the subject, the defendant the trustee and the complainant the beneficiary; that the defendant, as trustee, holds the naked legal title, to be conveyed to the complainant upon payment of the sum of $55,889.12, with legal interest from the time of its receipt;

that the complainant, on or about February 5, 1928, made a written demand upon the defendant for the re-conveyance of the land so conveyed to the defendant and offered to return the sum of money paid him, with legal interest thereon. It is also alleged that the defendant by the passage of the ordinance of February 7, 1921, unlawfully converted the land of the complainant into a forest preserve; that the ordinance by its terms, provisions and operation was an illegal taking of the land of the complainant, and that the agreement as to the compensation that the complainant was to receive for his land and the execution and delivery of the deed to the defendant were made by the complainant under duress, and that by reason of the lack of power of the defendant to acquire the land it has not the power to hold the same, and that the acts of the defendant in refusing to convey the land and receive back the consideration paid to the complainant are all in violation of sections 1 and 2 of article 2 of the bill of rights of the constitution of the State of Illinois and section 1 of the fourteenth amendment to the constitution of the United States.

The defendant filed a plea which was set down for argument and was not allowed but was ordered to stand as an answer. It alleged that the complainant's deed was voluntarily made by him after he had made a written proposition to sell the land for $56,062.50; that he had originally offered to sell it to the defendant for $600 an acre but afterward refused to convey it for that price and demanded $675 an acre, which proposition was accepted by the defendant; that the price paid was the full market value of the land, he was paid $56,062.50, the whole proceeding was voluntary, and no coercion of any kind was used nor were any threats made which caused him to make the conveyance.

The cause was heard in open court. The complainant was the only witness who testified. There was no cross-examination. His testimony, together with the ordinance

of February 7, 1921, the mandate of the Supreme Court in the *Washburn case,* the demand of the complainant for a re-conveyance of the land, the complainant's proposal dated August 13, 1921, to sell the land to the defendant for $600 an acre subject to the taxes of 1921, bearing on its face the written statement, "This is a compromise offer made to avoid litigation," his proposal dated November 1, 1923, to sell the same land for $675 an acre, and the warrant of the district for $55,889.12 payable to the complainant and indorsed by him, constituted all the evidence in the case, the defendant offering no evidence.

The appellant is an attorney who has practiced law in Chicago since 1894. After the passage of the ordinance of February 7, 1921, he had many conversations relative to the sale of his land to the appellee with representatives of the district. Testimony was offered to show that threats were made to bring condemnation proceedings and have them tried when the land was under water unless it were sold at an agreed price and to show that the appellant had an offer for the purchase of his land at $1000 an acre if he could get the land out of the forest preserve, but the evidence was not received. Though the appellee denied that it was material, it was stipulated that the appellee was opposed to draining the Skokie, and the appellant testified that before the ordinance was passed the appellee appeared in the East Fork Drainage District case in opposition to the drainage of the Skokie area. The appellant doubted the authority of the appellee to own or condemn his land.

The appellant's contentions are, that the enactment of the ordinance was itself a taking within the meaning of section 2 of the bill of rights of Illinois; that he sold the land under duress; that the acquisition of title to the land was beyond the power of the defendant; that the corporation has no right to hold what it has no right to acquire, and that the result of the transaction is a constructive trust,

the district taking the naked legal title to the land as a trustee for the complainant, the vendor, and the complainant holding the purchase price in trust for the district; that the whole transaction is illegal, the defendant having no power to purchase the land and take the public money from the treasury to pay for it and the complainant having no right to take the money, and the complainant being the least in the wrong is entitled to relief.

The enactment of the ordinance directing the purchase or condemnation of the land was not a taking of the land in any sense. It conferred no right in the land and did not interfere in any way with its use, control or disposition. Its only effect was an indication of an intention to negotiate for the purchase of the land. It may be an embarrassment to a land owner that his land is subject to be taken for a public use—a highway, a street improvement, a public building—but it is one of the conditions on which an owner of land holds it in this State. Even the filing of a petition for condemnation gives no more interest in land than negotiations for its purchase. Both are methods of procuring title and neither gives any interest in the land until completed. (*City of Chicago* v. *Ridge Park District,* 317 Ill. 123; *VanWinkle* v. *Loehde,* 336 id. 327; *Forest Preserve District* v. *Kean,* 303 id. 293.) With the filing of the petition, the petitioner, if it has the right of condemnation, acquires the right to obtain the title to the property at its market value at that time, and rights acquired in the property after that time are subject to the pending suit and subordinate to the rights of the petitioner. (*Schreiber* v. *Chicago and Evanston Railroad Co.* 115 Ill. 340.) The effect of filing a petition for condemnation creates no different situation from that produced by the beginning of any other suit involving a lien upon or claim of title to the land superior to that of an apparent owner of the title in possession, whether he has an unincumbered title in fee or not. The apparent owner in such a case,

however good his title, holds it subject to the result of the suit, and cannot convey it, pending the suit, except subject to whatever decree may be rendered. "It is the well settled rule of this State that where one is compelled to make payment of money which the party demanding has no legal right to receive, in order to prevent injury to his person, business or property, such payment is in law made under duress and may be recovered from the party receiving it; and it makes no difference that the payment was made with full knowledge of all the facts, provided it was made under duress." (*City of Chicago* v. *Northwestern Mutual Life Ins. Co.* 218 Ill. 40.) The rule is the same in regard to any other act than the payment of money.

It is argued that the ordinance practically made a forest preserve of the land—at least to the extent that because of the ordinance the appellee became the only possible prospective purchaser of it; that the appellee had the power of eminent domain and could bring a condemnation suit and cause it to be tried when the land was under water and the jury could view it only from boats, and threatened to do so, and might thereby procure a verdict greatly below its fair market value; and by reason of these facts the appellant and the appellee were not dealing on equal terms and the appellant was forced to sell to his only customer at its price to avoid the worse evil of being forced to sell at a price fixed by a jury viewing the premises under unfavorable conditions. This argument presents no circumstances of coercion or duress. The power to condemn this land had not been adjudicated but the appellant had the right to contest the power. The appellee had no right or power to fix the time of the trial. That could be fixed by the court in accordance with the demands of justice, and, whatever might be the condition of the land at the time of the view, evidence was admissible to show the condition of the land the year around. The view of the jury would not be conclusive on the question of value but they would be

required to take into consideration the evidence of the witnesses. It is not coercion or duress for a person who is making a claim against another who disputes it, to threaten to bring suit in a court of competent jurisdiction against that other and to use every effort to procure a judgment to the full extent of his claim. In this case there were two questions—one of the power of the appellee, the other of the value of the appellant's land; the one to be settled by the court, the other by a jury. The jury is the tribunal which the common law has provided for the trial of such issues, and our constitution has provided that the right of trial by jury shall remain inviolate, and in all cases in which public property shall be taken for public use, just compensation must be made and shall be ascertained by a jury. Litigants frequently think juries make mistakes in fixing the just compensation for private property taken or damaged for public use as well as in other cases where one litigant has necessarily been defeated, but still we cannot see that any court could properly hold that it was duress or coercion for a person discussing with another a disputed claim against that other to say that if they could not agree he would submit the matter to the decision of a court authorized by law to decide it.

When this transaction was being negotiated the appellee had not, as a matter of law, made the land a forest preserve or a part of one, and it had no right to condemn. When the appellant on August 13, 1921, made his first offer to sell to the appellee, his offer on its face bore the condition, "This is a compromise offer made to avoid litigation," and the appellant was of the opinion that the appellee did not have the right of condemnation. After his offer remained unaccepted for more than two years he made a second offer to sell at an advanced price and without any condition that it was made as a compromise offer or to avoid litigation. It was the second offer which was accepted. Such protest as the appellant made in his first

offer was eliminated from his second. It is well established that money unlawfully demanded under claim of authority and not under any mistake of fact may not be recovered unless paid under such pressure as to interfere with the free enjoyment of rights of person or property, and such compulsion must furnish the motive for the payment sought to be avoided. Proof that one party is under no legal obligation to pay the money and that the other has no right to receive it is of no consequence unless the payment was compulsory, in the sense of depriving the one making it of the exercise of his free will. (*Illinois Glass Co.* v. *Chicago Telephone Co.* 234 Ill. 535.) Here the offer finally made by the appellant and accepted by the appellee was without restriction or protest, after the appellant had considered the legal situation thoroughly and the results which might flow from a jury trial. The facts were well known. There was a mere mistake as to the legal situation growing out of the facts. The appellant was moved by his judgment of the law. He preferred to sell rather than rely upon his belief that no right of condemnation existed or to risk a trial by jury. It cannot be held that he acted under duress, for if so, every settlement of a disputed matter made under a mistake of law could be overturned.

The appellant and the appellee agree, and *Washburn* v. *Forest Preserve District, supra,* holds substantially, that the purchase of the land in question was *ultra vires*. The appellee asserts that where a conveyance of land to a corporation has been executed the grantor cannot secure a reconveyance of such land on the ground that the purchase was *ultra vires* the corporation; that only the State can object. The appellant admits that this is the law in the case of private corporations, and it is so well established as to make the citation of authority unnecessary. The appellant claims that the rule is limited to private corporations and has no application to municipal corporations. The rule has not been so limited in this State. On the contrary, it was

assumed and expressly held in *Sherlock* v. *Village of Winnetka,* 59 Ill. 389, that a municipal corporation in reference to its private property stands upon the same footing as other corporations; that its corporate property is held in trust for the benefit of its constituents and the corporation is bound to administer such property faithfully, honestly and justly, and if it is guilty of a breach of trust by disposing of its valuable property without any, or for a nominal, consideration, it will be regarded in the same light as if it were the representative of a private individual or of a private corporation. In that case certain acts of the village trustees in purchasing real estate, improving it by the erection of buildings suitable for a school, issuing bonds in payment and renting the building to a private academy, were questioned in a tax-payer's suit for an injunction. The court said: "Nor is there a case shown for rescinding the purchase of block 50 from Wilson. Improvements have been made upon the land at great expense. Authority was given by the village charter to purchase the land and erect the building for corporate uses, so that the purchase was not made without authority. Even if the members of the council designed from the beginning to pervert the land and building to private uses, for their own private benefit, and there was fraud in the purchase, the contract with Wilson should not be rescinded, because the parties cannot be placed *in statu quo.* He cannot be compelled to take the building and pay for it, and it would be inequitable for him to have it, as he would if he took his land back, without paying for it. If the village corporation have title to the land, neither Wilson nor the individual members of the council can ask to have it divested."

In *City of Champaign* v. *Harmon,* 98 Ill. 491, an action of ejectment was brought by the city to recover possession of land which the city had bought at a tax sale and to which, as it claimed, it had subsequently perfected its title. We said: "Where a general authority exists in a municipal

corporation to buy real estate for any purpose, the vendor in such cases may not afterwards avoid his contract by insisting his deed is void because the corporation may have exceeded its powers in making such purchase. Only the State may inquire whether the corporation has transcended its powers. As we have seen, bidding off lands at a tax sale is not an absolute purchase of property, and, as there is a total want of authority to make such bid, the question whether the corporation has exceeded express powers in that regard does not arise."

In *Hjelm* v. *City of St. Cloud,* 134 Minn. 343, Swan Hjelm, who for many years prior to September, 1912, had been the owner of a small home worth $700 in the city, by reason of advanced age and feeble health became in need of an attendant. In those circumstances he proposed to convey his home to the city in consideration that the city furnish him food, care, medical attention and personal attendance during the balance of his life and decent burial upon his death. The city accepted the proposition, the conveyance was made to it and the obligations assumed by the city were performed. The plaintiff, the only son of the grantor, brought his action to set aside his father's deed. The city had general authority to acquire real estate for general municipal purposes. The court held: "A grantor of property to a municipal corporation cannot, after he has received the full consideration for the transfer, recover the property back on the ground that the acquisition of the property was unauthorized. Having parted with the property and received the benefit accruing to him from the transfer, the use of the property by the grantee is a matter of no concern to him.—3 Dillon, Mun. Corp. (5th ed.) sec. 990; 3 McQuillin, Mun. Corp. sec. 1124; *Barnes* v. *Multnomah County,* 145 Fed. 695; *Chambers* v. *City of St. Louis,* 29 Mo. 543, 576, 577; *City of St. Louis* v. *Davidson,* 102 Mo. 149, 14 S. W. 825, 22 Am. St. 764; *Town of Beloit* v. *Heineman,* 128 Wis. 398."

In *Raley* v. *Umatilla Co.* 15 Ore. 172, the county had capacity to purchase and hold lands for the use of the county. In 1868 Goodwin and his wife conveyed certain real estate to the county, in consideration of one dollar, for certain specified educational purposes. After the death of Goodwin his successors in title through inheritance brought suit to quiet their title to the land, contending that the county had no capacity to take the land for the use to which it was intended to be put. The court said, after discussing the question whether the county had the capacity to take for the special purpose stated in the deed: "But if the premise contended for by the appellants were conceded, the conclusion which they seek to draw from it would not follow. The statute plainly confers upon counties the power to acquire and hold real property for certain purposes, and the appellants' contention is that this deed conveys property to the county outside of and for other and different purposes than those specified in the statute. This is a question which these plaintiffs cannot be permitted to raise and in which they have no interest. That could only be done at the instance of the State.—2 Dillon on Mun. Corp. sec. 574; *Trustees of Davidson College* v. *Executors of Maxwell Chambers*, 3 Jones' Eq. 253; *Goudie* v. *N. W. Co.* 7 Pa. St. 253; *Land* v. *Coffman*, 50 Mo. 243."

In *Beckett* v. *City of Petaluma*, 171 Cal. 309, the city acquired an outstanding tax title to the real estate involved and devoted it to manufacturing uses for which it had no capacity to take and hold real estate, until its possession ripened into a title by limitation. Thereafter the heirs of the original owner, whose title had been affected by the tax title, sued to quiet their title. The court held that the city had title by limitation, and stated: "The objection here made is collateral. The State of California is not a party to the action. The parties who transferred the property to the city for the unauthorized uses are not complaining. At the time of that transfer they were holding title, if at

all, adversely to the present plaintiffs. The question whether or not property in possession of a city is used for purposes within its corporate powers cannot be raised collaterally, nor at all except by the State or a tax-payer or some person authorized to act in behalf of its inhabitants. The well-established doctrine is thus stated by Mr. Dillon: 'Whether a municipal corporation with power to purchase and hold real estate for certain purposes has acquired and is holding such property for other purposes is a question which can only be determined in a proceeding instituted at the instance of the State. If there is a capacity to purchase, the deed to the corporation divests the estate of the grantor and there is a complete sale; and whether the corporation, in purchasing, exceeds its power is a question between it and the State and does not concern the vendor or others.'—3 Dillon on Mun. Corp.—5th ed.—sec. 990."

In *Hafner* v. *St. Louis*, 161 Mo. 34, the controversy concerned land outside of the city and acquired and held by the city for wharf usage. The court stated: "The necessities of the city, under the statute, constitute ample warrant for the purchase of land, wherever located, for other purposes than those designated in its charter. And if it be recognized that the city had power to purchase and the grantors the right to sell the land in controversy the conveyance would operate to transfer title to the city, and neither the grantors, nor those claiming through them, can be heard to complain that the city improperly or unwisely exercised its power in that respect, to defeat its claim of title. That is a matter that concerns alone the State, and she alone will be heard to complain. Under exactly the same charter provisions as those in force when the wharf deed in question was executed, and with the same general statute applicable to the municipal corporation before it, this court in the case of *Chambers* v. *St. Louis*, 29 Mo. 543, when the devise to the city under the famous Mullanphy will was up for consideration, held that the city had the

power to acquire, by grant or devise, land outside of its corporate limits for municipal purposes other than those designated in the charter, and in the same case it was also further announced that even if the city did not have such power, neither the grantors in such deed nor their privies could try the question in a collateral proceeding, that it was a matter of no concern to them but a matter solely between the State and the city."

Other cases in which the courts have arrived at the same conclusion are *Holton* v. *Commissioners of Lake County*, 55 Ind. 194, and *Block* v. *Davidson*, 41 id. 212. These cases all hold that the title of a municipal corporation authorized to hold land for any purpose, to land which has been conveyed to it, cannot be questioned on account of its lack of power to acquire title to the particular land or for the particular purpose by anyone other than the State. The appellant argues that to apply the rule, which he admits is of universal application, in the case of private corporations to municipal corporations is contrary to public policy, but he refers to no authority in any decided case where that rule has been announced or statement in any text book that such is the rule. He arrives at his conclusion as to the question of public policy from a somewhat intricate process of deduction from certain paragraphs in text books of recognized authority in regard to the doctrine that equity regards that as done which in good conscience ought to be done, and that while equity will not aid either of the parties to an illegal contract when they are *in pari delicto*, yet where they are not *in pari delicto* equity will sometimes afford relief to the less guilty party, and even where the parties are *in pari delicto* the courts may interfere from motives of public policy. In our judgment the texts do not justify counsel's conclusion in regard to the question of public policy, and the weight of authority is opposed to it; and in this case, where the two parties to the transaction, with equal knowledge or in equal ignorance

of the law, carried out their agreement, the one by conveying the land to the corporation which, as he was held to know, could not take the title, and the other paying the consideration, each is held to knowledge of the invalidity of the contract. What equity had either against the other? The complainant insists that a constructive trust arose out of the transaction. There was no fraud, no duress, no equity of either against the other and no basis for a constructive trust. The appellant's case has no equity. He got what he bargained for, and he cannot, under guise of the protection of public interest, rue his bargain. He has no private interest in the subject matter.

The decree is affirmed.

*Decree affirmed.*