MARIO R. EGIDI, Plaintiff-Appellee, v. THE TOWN OF LIBERTYVILLE, Defendant-Appellant (Bank of Highland Park, Defendant-Appellee).

Second District   No. 2—90—1283

Opinion filed September 6, 1991.

James N. Azim III, of Siemon, Larsen & Purdy, of Chicago (Gerald P. Callaghan, of counsel), for appellant.

Magee, Negele & Associates, of Round Lake (James T. Magee, of counsel), for appellee Mario R. Egidi.

Martin B. Carroll, of Neal, Gerber, Eisenberg & Lurie, of Chicago (Robert Radasevich, of counsel), for appellee Bank of Highland Park.

Michele Odorizzi and George A. Ranney, Jr., both of Mayer, Brown & Platt, of Chicago, for *amici curiae.*

JUSTICE BOWMAN delivered the opinion of the court:

This is the second time this matter has come before us. Plaintiff, Egidi, brought the action as a taxpayer's suit against defendants, Town of Libertyville (Libertyville or Township) and Bank of Highland Park (Bank), challenging the Township's acquisition of land from the Bank. The Township appeals from an order which granted summary judgment in favor of Egidi and ordered rescission of the sale, conveyance of the land back to the Bank, and refund of the purchase price to Libertyville. The Bank did not appeal the order but submitted a brief as a defendant-appellee. Accordingly, throughout this disposition reference will be made to only one defendant, *i.e.,* Town of Libertyville. Also, we have allowed the filing of an *amicus curiae* brief in support of the Township. The *amici* are the Open Lands Project, Nature Conservancy, and other parties interested in open space and environmental issues.

The factual background of this dispute is set forth in detail in the earlier case, *Egidi v. Town of Libertyville* (1989), 181 Ill. App. 3d 542 (*Egidi I*), and will be repeated here only to the extent necessary to resolve the issues.

Libertyville purchased the vacant land at issue pursuant to the Township Open Space Act (Act) (Ill. Rev. Stat. 1987, ch. 139, par. 321 *et seq.*). In both *Egidi I* and this case plaintiff challenged the authority of the Township to purchase the property. In both instances plaintiff argued that the amount of acreage involved did not meet the requirements of the Act. Specifically, the Act authorizes the purchase of open land by a township but, in section 2(b), defines open land as "any space or area of land or water of an area of 50 acres or more, the preservation or the restriction of development or use of which would" preserve or foster various specified goals (Ill. Rev. Stat. 1987, ch. 139, par. 322(b)). While Libertyville purchased a total of 50.6771 acres from the Bank, the property is bisected, across its far southeast corner, by a 270-foot-wide Commonwealth Edison right-of-way. Accordingly, the land purchased by Libertyville actually lies on either side of the right-of-way, and neither side contains 50 acres. There are

approximately 49.5 acres to the north of the Commonwealth Edison property and approximately 1.25 acres to the south.

In *Egidi I,* based on what appeared to be a total lack of connection between them, we found that the two parcels did not adjoin or abut each other. Since we were considering the status of the parcels under the Township Open Space Act, we also found it irrelevant that, under Illinois law, they might be considered contiguous for annexation purposes, as urged by Libertyville. (See Ill. Rev. Stat. 1987, ch. 24, par. 7—1—1.) We noted that the Act defines open land as " '*an* area of land or water of *an* area of 50 acres or more' " (emphasis in original) (*Egidi,* 181 Ill. App. 3d at 545) and held that the two parcels, physically separated and separately owned, did not constitute "an area of land" as the phrase is used in the Act. Consequently, Libertyville had not complied with the Act's acreage requirement.

In this case the parties again dispute whether the land meets the statutory acreage requirement. However, this time Libertyville contended in the trial court that when it purchased the property from the Bank it acquired not only the acreage in fee simple but also two easements over the Commonwealth Edison right-of-way. Defendant argued that these combined interests constituted a purchase of "open land" consistent with the Act. The lower court rejected Libertyville's argument and found that the two parcels were separate areas of land which did not abut or adjoin each other and that the easements did not provide ownership or control over an area of at least 50 acres. Essentially, the court concluded that the property sought by the Township was not "open land" as defined in section 2(b) of the Act. The Township claims that the trial court erred in its findings and, therefore, improperly granted Egidi's motion for summary judgment.

Summary judgment is proper when there remain no genuine issues of fact and the movant is entitled to judgment as a matter of law. (*Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233-34.) However, summary judgment is a drastic means of ending litigation and should be granted only when the right of the moving party is clear and free from doubt. (*Logan,* 139 Ill. 2d at 233.) These principles guide our inquiry.

■ The Township initially attacks the sufficiency of plaintiff's complaint, asserting that the complaint does not state a taxpayer's cause of action because it does not allege that plaintiff is a taxpayer in Libertyville Township. It is beyond dispute that the plaintiff in a taxpayer's action must allege that he is a taxpayer of the public body on whose behalf the suit is brought. (*Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 749.) Egidi's complaint does not specifically state that

he is a taxpayer in Libertyville Township. But it does allege that he resides in the Township and owns real estate situated in the Township. The real estate is identified by both its street address and its permanent real estate index number. As the owner of real property, Egidi was obligated to pay the real estate taxes on that property. Plaintiff also alleged that he brought this action "on behalf of all taxpayers and residents" of the Township, clearly including himself as both a taxpayer and a resident. In our view the allegations of plaintiff's complaint sufficiently assert his status as a taxpayer.

■ Defendant further insists that plaintiff's complaint is inadequate because it fails to allege that harm has occurred to the public as a result of defendant's conduct. It is well established that a taxpayer's suit requires an allegation that the public has suffered injury. (*Village of Leland ex rel. Brouwer v. Leland Community School District No. 1* (1989), 183 Ill. App. 3d 876, 879; *Western Lion Limited v. City of Mattoon* (1984), 123 Ill. App. 3d 381, 386.) The complaint claims that the Township spent $480,000 in Township funds for the purchase of the land; that the Township did not have the authority to acquire the property; that the Township purchase was an illegal and void act; and that the Township's conduct resulted in misappropriation and wrongful expenditure of Township funds.

■ Taxpayers have an equitable right to sue to protect their interests in public funds. (*Feen v. Ray* (1985), 109 Ill. 2d 339, 344.) The right of a taxpayer to bring suit is based upon misappropriation of general public funds and flows from the proposition that the taxpayer has equitable ownership of the funds and is liable to replenish the treasury in the event of misappropriation. (*Price v. City of Mattoon* (1936), 364 Ill. 512, 514; *Lynch*, 45 Ill. App. 3d at 749.) Viewed in light of these principles, we think Egidi's allegation of injury is sufficient to withstand defendant's attack. Specifically, plaintiff identified the injury as the wrongful expenditure of plaintiff's funds to acquire real estate. Since it is tax revenue that is of concern here (see Ill. Rev. Stat. 1987, ch. 139, pars. 323, 325), misappropriation and wrongful expenditure of that revenue are direct and blatant assaults on the taxpayers. Under the Act, tax liability is created and attaches to township funds. The taxpayers furnish the money in the first place and must replace it if necessary. The taxpayers' injury is the misuse and potential loss of their tax money. We find the complaint sustainable.

■ The Township next launches several attacks on Egidi's standing to sue, all of which, according to Egidi, have been waived by defendant's failure to raise them properly in the trial court or during

the first appeal of this case. Our review of the record persuades us that the standing issues were sufficiently set forth below to preserve them for this appeal. Furthermore, it was not necessary for defendant to raise standing the first time the case came before this court because plaintiff there appealed from an order granting the Township's section 2—619 (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) motion to dismiss. In relevant part the motion, which was intended to defeat plaintiff's claim at the outset, asserted only Libertyville's compliance with the Act. At the time the motion was filed, there had been no discovery, and no answer had been filed. In the absence of adequate supporting information, defendant was not required to put forth its standing challenge. Consequently, Libertyville's silence on the issue in the first appeal has no effect on its right to question plaintiff's standing in this appeal.

Libertyville's first standing argument is that, once an acquisition of land by a municipal corporation is completed, an individual, even though he is a taxpayer, does not have a sufficient interest in the matter to allow him to attack the acquisition on the ground it is *ultra vires*. Although the Township recognizes the right of a taxpayer to seek prospective, or injunctive, relief from allegedly unauthorized transactions, it insists that a challenge to a completed purchase of real estate may only be brought by the State of Illinois. Defendant cites several authorities for this proposition. We find defendant's reliance on those authorities to be misplaced.

In *Washburn v. Forest Preserve District* (1927), 327 Ill. 479, in a taxpayer's suit, the public body had exceeded its power in purchasing real estate for forest preserve purposes. The court granted an injunction against further land acquisition but refused to impose a mandatory injunction directing the reconveyance of land previously acquired. In denying plaintiff the latter relief the court said, "His claim to such relief is not established and \*\*\* must be denied." (*Washburn*, 327 Ill. at 488.) While it did not explain its denial of a mandatory injunction, it appears the *Washburn* court may have been merely following precedent.

At the time *Washburn* was decided, unless a statute provided otherwise, an individual plaintiff could establish standing to bring a taxpayer's suit only by alleging and proving that he would suffer special damage, different from that suffered by the public, as a result of the conduct attacked in the suit. (See *Droste v. Kerner* (1966), 34 Ill. 2d 495, 504 (and cases cited therein).) Evidently, plaintiff in *Washburn* either had not shown special damages to himself resulting from previously completed purchases of forest preserve lands or did not other-

wise show that reconveyance was warranted. We note that since *Droste* the special damages requirement has been eliminated. (See *Paepcke v. Public Building Comm'n* (1970), 46 Ill. 2d 330, 341-42.) In any event, although defendant implies otherwise, the *Washburn* court addressed only the sufficiency of plaintiff's claim for the requested relief. The court did not indicate that, as a matter of law, plaintiff lacked standing and therefore could never be granted the relief he sought. In fact the court did not discuss plaintiff's standing or, more specifically, whether the State was the only party who could challenge a municipality's power to hold improperly acquired real estate. *Washburn* does not convince us that plaintiff in this case lacks standing.

Another of defendant's cases, *City of Champaign v. Harmon* (1881), 98 Ill. 491, did not involve a taxpayer's suit. Rather, in relevant part, it was concerned with an attempt by a delinquent taxpayer to get back real estate the city had purchased at a tax sale. After receiving a tax deed for the property, the city sought to eject the defendant from possession. Defendant responded by challenging the city's power to purchase real estate at a tax sale. While it is not altogether clear in the opinion, it appears the taxpayer endeavored to have the sale voided as an unauthorized act, but without reimbursement to the city for the back taxes it had paid.

The court found that, although the city enjoyed a general power to purchase real estate, it did not have the specific power to make any such purchases at a tax sale. Nevertheless, by way of analogy the court indicated that, where a city has a general power to purchase real estate, a vendor may not escape his contract by insisting his deed is void because the city exceeded its powers in executing the contract. It was in this context the court made the statement that only the State may question whether a corporation has acted beyond its powers. The court did not grant relief to the city because the purchase of the real estate was illegal. No relief was granted to the defendant, either, however, because the record showed that he owed the taxes on the property and ought to pay them. The court added: "The law will leave the parties where they have chosen to place themselves, in respect to the property itself." *Harmon*, 98 Ill. at 496.

In *Harmon* the property owner lost his real estate through his own failure to pay taxes on it. The court would not allow him to recoup the property at the city's expense by exploiting the city's improvident and unauthorized purchase of the parcel. In sum, the court's refusal to void the city's acquisition of the real estate turned not so much on the fact that the tax sale had been completed as it did

on the court's awareness that the defendant would reap a windfall if he got back his land without ever paying off the tax debt he had created.

In contrast to *Harmon*, in the case before us plaintiff cannot be said to have placed himself in the position of a wronged taxpayer. Nor does the complaint reflect an intent to exploit the Township's allegedly unlawful conduct for plaintiff's personal gain. The action was brought for the benefit of all taxpayers and seeks relief from the misuse of tax money. In our view this is not the kind of suit addressed in *Harmon*. Consequently, we find defendant's use of *Harmon* unavailing on the issue of Egidi's standing.

Although the Township relies heavily on it, *Mills v. Forest Preserve District* (1931), 345 Ill. 503, is not helpful to defendant's position, either. Suit there was not brought by a taxpayer but by a dissatisfied vendor seeking to rescind the sale of his land to the defendant. It was not disputed that the purchase by the forest preserve district was *ultra vires*. After reviewing its own precedent, as well as authority from other jurisdictions, the court found that, under the circumstances of the case before it, only the State could challenge the power of the forest preserve district to acquire the particular land in question. However, the cases the court relied on, including *Harmon*, which we discussed above, involved disputes between the municipal body and sellers or their heirs, or similar entities, who were attempting to undo the transaction into which they themselves had entered and for which they had received the full benefits accruing to them. The *Mills* court denied relief to the vendor because the parties to the transaction were on an equal footing, there had been no fraud or duress, and the vendor "got what he bargained for, and he cannot, under guise of the protection of public interest, rue his bargain." (*Mills*, 345 Ill. at 518.) Relief was not denied in *Mills* merely because the real estate had already been acquired. Relief was denied because plaintiff had already reaped the benefits of his voluntarily executed contract with the forest preserve district, and it was no concern of his whether the defendant had improperly entered into that contract. In the court's words, plaintiff has "no private interest in the subject matter." *Mills*, 345 Ill. at 518.

One case cited by the *Mills* court clearly demonstrates the ineffectiveness of the kinds of cases on which defendant relies. In *Beckett v. City of Petaluma* (1915), 171 Cal. 309, 153 P. 20, the city acquired title at a tax sale and devoted the real estate to uses beyond its power to allow. In the heirs' suit to quiet title, the court said of the plaintiffs' attack on the city's lack of power:

" 'The objection here made is collateral. The State of California is not a party to the action. The parties who transferred the property to the city for the unauthorized uses are not complaining. *** The question whether or not property in possession of a city is used for purposes within its corporate powers cannot be raised collaterally, nor at all except by the State *or a taxpayer or some person authorized to act in behalf of its inhabitants.*' " (Emphasis added.) *Mills*, 345 Ill. at 515-16, quoting *Beckett*, 171 Cal. at 313-14, 153 P. at 22.

There is a clear-cut difference between the precedent invoked by defendant and the taxpayer's suit presently before us. The plaintiffs in the Township's cases challenged the defendants' power, not because they or other taxpayers were wronged by the exercise of that power, but because they hoped to achieve some personal gain. The courts would not allow the plaintiffs to maneuver out of their self-created situations by focusing on improper municipal conduct. Accordingly, the courts refused to undo completed real estate transactions despite the fact the transactions may have been unauthorized. In contrast, in this case we are not concerned with a party to the transaction who has come to "rue his bargain." Rather, we speak of a taxpayer who has attacked a completed purchase of real estate in order to right a wrong assertedly worked on all taxpayers of the Township. The focus of the taxpayer is not on the land itself, or even on unwinding a real estate transaction, but on protecting public funds.

In sum, the case now before us presents a situation entirely different from those in *Harmon* and *Mills*. As implied in the *Beckett* case, a taxpayer acting in the interests of the inhabitants of a State may challenge a governmental body's improper exercise of its powers. We do not believe the authorities defendant relies on require us to find that, under the circumstances of this case, only the State may sue and Egidi therefore lacks standing.

Defendant and the *amici* strongly advise that no Illinois case has ever allowed a taxpayer to undo an acquisition of real estate that has already been completed. The *amici*, particularly, urge that we should distinguish between prospective relief and rescission of a completed transaction. They point out that preventing a municipality from expending funds is easier than undoing a sale of land and that changed conditions may make rescission impossible or unjust. Also, they posit that allowing rescission would subject municipalities to lengthy uncertainty regarding the validity of real estate purchases since taxpayers could wait for years after a purchase before seeking relief. In regard to these arguments we note only that inherent in the

remedy of rescission is a requirement that the parties be restored to the *status quo* as it existed prior to execution of the contract (*Puskar v. Hughes* (1989), 179 Ill. App. 3d 522, 528). Here, the Bank, which sold the property to the township, is agreeable to rescission. There is no indication in the record before us that the parties could not be returned to their preacquisition positions.

■ Furthermore, while relief in taxpayers' suits is generally prospective, or injunctive in nature, it is not always so. (See *Kinzer v. City of Chicago* (1988), 169 Ill. App. 3d 447, 457 (and materials cited therein).) We are in agreement with the *Kinzer* court that constituents of a taxing body, acting on behalf of that body, may also invoke actions to recover public funds which have been expended unlawfully. (*Kinzer*, 169 Ill. App. 3d at 457.) It is not significant that the money has already been spent. Plaintiffs in *Kinzer* had standing to seek a declaration that certain contracts were void and to recoup funds spent illegally by city officials pursuant to those contracts. A taxpayer's suit was not barred by the fact that a purchase of real estate had already been completed in *People ex rel. Hamer v. Board of Education of School District No. 109* (1970), 130 Ill. App. 2d 592. The court there held that plaintiff had standing and allowed him to amend his complaint to attempt to state a cause of action. In this case Egidi essentially seeks to recover the money he claims was spent illegally by the Township. We cannot say that the remedy he seeks forecloses plaintiff's right to bring this suit.

■ The Township's final standing argument, that Egidi cannot claim to be a taxpayer because he has not paid taxes in Libertyville Township since 1985, has no merit. Defendant correctly asserts that Egidi's real estate taxes were paid by his mortgagee, the Bank, rather than himself. However, Libertyville nowhere disputes that Egidi was the owner of record of real estate in the Township at all pertinent times or that he remains liable for real estate taxes, including any paid by his bank. At best, all that can be said is that plaintiff is a taxpayer indebted to his mortgage holder for taxes paid by the mortgage holder. This does not amount to losing his taxpayer status.

Having concluded that plaintiff has standing to maintain this suit, we turn now to Libertyville's contention that the trial court erred in finding that the acreage it acquired was not "open land" pursuant to the Act. The first matter to be resolved is an attack by Egidi on the viability of the easements claimed by Libertyville. The land comprising the right-of-way was originally conveyed by Egidi to Commonwealth Edison by deeds executed in 1955 and 1960. Both deeds reserved an easement across the right-of-way "for 2 private roadways

33 feet in width to be established in a Southeasterly and Northwesterly direction across the above described property at locations" which were to be agreed upon and which would not interfere with the grantee's facilities, equipment, or use of the property. Plaintiff objects that the easements are too vague to be effective and, therefore, do not serve as a connection between the two segments of Township property. The record on this point is not sufficient to allow a complete determination of this issue.

Egidi and the Bank claim that Egidi's deeds to Commonwealth Edison conveyed a strip of land extending far beyond the border of the subject property; that Egidi previously sold the land on either side of the right-of-way, other than the subject property, to a third party; and that the roadway easements reserved in the deeds were intended to serve the full length of the strip conveyed to Commonwealth Edison, not just the 270-foot section that runs through defendant's property. Plaintiff argues that, since there are now multiple owners of the original Egidi parcel, all of whom have an interest in the easements, and the easements were never specifically located, any interest the Township may have in them is too tenuous to allow the easements to serve as a link between the two segments of the Township's land.

In support of this position, plaintiff and the Bank cite only to deeds reflecting a conveyance of real estate to Egidi and later conveyances from Egidi to Commonwealth Edison. None of the deeds, however, are accompanied by plats corresponding to the various legal descriptions, and plaintiff does not direct us to any other means of verifying his claims regarding the land he originally owned, the relationship of the right-of-way to his land, the land sold to a third party, or even his claim as to the full extent of the strip of land he sold to Commonwealth Edison. As defendant notes, plaintiff has included with his brief what purports to be a photocopy of a portion of a survey of the properties under discussion. The original of the photocopy is found in the record attached to one of plaintiff's memoranda of law. However, neither the original nor the copy is certified or accompanied by an affidavit or otherwise authenticated, and we decline to rely on it.

We have examined the record with care but cannot determine whether the easements apply to only the Township's property or if, indeed, they are meant to provide access points along a far longer section of right-of-way. Furthermore, even if we were able to find, as plaintiff urges, that the easements are pertinent to a longer strip than the one across the Township's land, the problem would not be resolved. If, at the time the easements were reserved, all of the land

adjoining the right-of-way was held by Egidi and his wife as sole owners, then they alone would have held all the easement rights. It would have been easy enough for them to decide, in concert with Commonwealth Edison, where the two roadways should be placed in relation to the full length of the right-of-way, whatever that length may be. Now, however, Egidi asserts that his original parcel is held by multiple owners. Assuming this is so, the record does not reveal the respective easement rights of those owners. We cannot determine whether defendant is entitled to both, one, or no easements. Consequently, we have no way of knowing whether the Township's parcels are connected by an easement interest in the right-of-way.

■ We agree with defendant that, as a general rule, the failure of an easement description to specify details, such as the exact location or the width, does not render the easement excessively vague or unenforceable (*Joseph Giddan & Sons v. Northbrook Trust & Savings Bank* (1986), 151 Ill. App. 3d 537; *Vallas v. Johnson* (1979), 72 Ill. App. 3d 281). However, we are not concerned here with questions of the existence or enforceability of the easements. There is no dispute that easements were reserved in Commonwealth Edison's deeds. What is of vital concern is where the easements are located.

■■ It was established in *Egidi I* that the Township's parcels were completely separate from one another and did not form an "area of land." The entire thrust of defendant's current position is that the purported easements link its separate segments together into one parcel which totals at least 50 acres in size and, thus, constitutes the requisite "area of land." If there is no easement located in such a way as to connect the Township's property, the Township merely has the two separate segments it did in *Egidi I*, and its argument is futile. The record leaves many factual questions surrounding this issue of location unanswered. It is plainly evident in the record, as well as in the parties' appellate briefs, that the factual questions are disputed. Since summary judgment is proper only when there remain no genuine issues of fact (*Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233-34), we find that the trial court erred in granting plaintiff's motion. This matter must be remanded for resolution of the relevant factual issues.

In the event the trial court determines the Township has easement rights across Commonwealth Edison's property, we are confident the parties will again raise the questions of law pertaining to interpretation of the Act which have been raised in this appeal. Therefore, we will discuss those issues.

Libertyville contends that the trial court erred in finding that the various segments of its property, including the easements it claims, did not abut or adjoin each other and that the purported easements did not give Libertyville ownership or control over at least 50 acres. Egidi takes the position that the easements, even if they are as defendant claims, are not adequate to allow Libertyville's separate north and south parcels, plus the easements themselves, to be combined into a single 50-acre parcel in order to fulfill the statutory requirements. However, plaintiff's argument is couched entirely in terms of contiguity as that term is used in annexation law which, as plaintiff points out, we found not relevant to our discussion of section 2(b) of the Township Open Space Act. (*Egidi*, 181 Ill. App. 3d at 545.) Plaintiff assumes, incorrectly, that we must rely on contiguity in the annexation context in order to find contiguity here. While *Egidi I* imposes a contiguity requirement in order to identify "an area of land," such contiguity is not necessarily the same as that required for annexation.

In *Egidi I* we focused on the complete separation of Libertyville's parcels, noting that they did not "adjoin or abut each other." We noted, too, the separate ownership of the intervening land and concluded that Libertyville's tracts could not be combined in order to make them fall within the statutory definition of "an area of land." In this case we must consider the additional factor of Libertyville's possible interest in the property separating the two pieces of land it owns and whether that interest is sufficient to meet the contiguity requirement established by *Egidi I*.

We recognize that Libertyville's interest in the Commonwealth Edison right-of-way, if any, is limited to easements. However, section 4.02 of the Act authorizes townships to secure open land as follows:

> "To acquire by gift, legacy, purchase, condemnation, *** lease, agreement or otherwise the fee *or any lesser right or interest* in real property that is open land, *** and to hold the same *** for open space, scenic roadway, pathway, outdoor recreation, or other conservation benefits." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 139, par. 324.02.)

In our view, this language contemplates that townships may acquire both fee and less than fee interests in real property and that, when necessary, those interests may be combined in order to fulfill the purposes set forth in the statute. Thus, that Libertyville's interest in part of the requisite area of land is in the form of easements is not fatal to the Township's acquisition.

There remains the question of whether an easement interest is sufficient to show that the Township's properties are contiguous. Libertyville has a fee interest in its own tracts of land and claims an easement interest in Commonwealth Edison's land. Admittedly, its fee interests do not adjoin one another. On the other hand, we think its collective interests, if established, would adjoin and abut one another.

The effect of any easement held by Libertyville must be viewed in light of the fact that the Act seeks " 'to facilitate the transfer or acquisition of land for open space purposes' " (*Town of Libertyville v. First National Bank* (1990), 133 Ill. 2d 356, 362, quoting *Town of Libertyville v. First National Bank* (1988), 178 Ill. App. 3d 591, 595 (Dunn, J., dissenting)). Too, according to our supreme court "[o]ne readily apparent goal of the [Act] is to allow townships to preserve large tracts of land from encroaching development so that certain environmental concerns may be advanced." (*First National Bank*, 133 Ill. 2d at 362.) We are confident that these purposes will best be served by giving liberal effect to defendant's easement interests.

The easements asserted here are each 33 feet wide and short in length. The Township posits that they both, or at least one of them, run directly from one of the Township's parcels to the other. The only property they supposedly cross is right-of-way. There are no roads and no residential or commercial development between the parcels they are claimed to connect. It appears they consist of open land, connecting two other parcels of open land. The purported easement interests were acquired simultaneously with the fee interests. In our view, even one such easement would provide a viable connection between two parcels lying relatively close together and separated only by land which, except for its use as a right-of-way, is indistinguishable from the parcels themselves. Keeping in mind the clear statement of section 4.02 that a township may acquire any interest in open land, and the statute's goal of preservation of large tracts of land, we are persuaded that the easements, if found to exist, sufficiently establish that the 50 acres in which Libertyville has an overall interest are contiguous for purposes of the Act.

While we have concluded that defendant's land is contiguous for purposes of acquisition under the Act, we note that the trial court also specifically found that the easements did not provide "ownership or control" over the necessary 50 acres. This language appears to be taken from *Town of Libertyville v. First National Bank* (1990), 133 Ill. 2d 356, where our supreme court made clear that, under the

proper circumstances, the Act allows townships to acquire parcels of less than 50 acres.

■ In *First National Bank*, the court incidentally reiterated the rule of *Egidi I* that the 50 acres must consist of contiguous land, even if it is not all under the same ownership. The court went further, though, and delineated in greater detail the conditions under which smaller parcels can become open land as defined in section 2(b). In addition to being contiguous, such parcels must be part of a 50-acre area which is being preserved or restricted in terms of development or use. Also, the township's acquisitions must proceed in a manner consistent with the 50-acre requirement. In *First National Bank*, even though the township had tendered offers of purchase on well over 50 acres of adjoining property, it lacked the power to condemn a 2.985-acre parcel because it did not "control and [would] not contemporaneously acquire ownership or control over land adjoining the subject property that, together with the subject property, comprise[d] an area of land of 50 acres or more" (*First National Bank*, 133 Ill. 2d at 363).

It is clear from *First National Bank* that acquisition of open land pursuant to the Act must result in ownership or control of at least 50 contiguous acres which are being preserved or restricted in order to fulfill the purposes of the statute. (See also *Town of Libertyville v. Blecka* (1989), 180 Ill. App. 3d 677, 682.) We have already decided that, if the Township acquired the easement interest we have been discussing, the land it purchased meets the acreage and contiguity requirements. However, since Libertyville holds no more than an easement interest in part of the total land acquired, there remains a question of whether such an interest gives Libertyville the necessary control.

■ The easements relied upon by Libertyville were originally reserved by Egidi for the benefit of the rest of his land. One terminus of each easement was on land owned by him. The land retained by Egidi, along with the land he conveyed to Commonwealth Edison, originally formed one parcel. Under these circumstances, easements appurtenant were formed. (See *Taylor v. Lanahan* (1979), 73 Ill. App. 3d 829, 832; *Aebischer v. Zobrist* (1977), 56 Ill. App. 3d 151, 154-55.) Once created, easements appurtenant run with the land and pass by conveyance. (*Harris Trust & Savings Bank v. Chicago Title & Trust Co.* (1980), 84 Ill. App. 3d 280, 287; *Aebischer*, 56 Ill. App. 3d at 155.) Accordingly, the easement interest now claimed by Libertyville is permanent in nature. It would give the Township the right to put in at least one 33-foot-wide roadway in order to facilitate movement from one segment of its property to the other across Commonwealth Edi-

son's right-of-way. The only restriction on any such roadway would be that it must be located so that it would not interfere with Commonwealth Edison's equipment or use of the property. These facts lead us to believe that the asserted easements would give the Township the level of control envisioned by the Act as necessary to qualify a less than fee interest as open land. Moreover, since the easement would provide access between the two parcels owned by the Township, we perceive control over these easements as achieving the same purpose as ownership of the fee interest in the parcels connected by the easements, *i.e.*, preservation or restricted development or use. We conclude that Libertyville's claimed easement interest, combined with its fee interests, would be adequate to establish that the Township contemporaneously acquired ownership or control over an area of 50 acres or more and, thus, met the statutory requirements.

For the reasons set forth above, the order of the circuit court of Lake County granting summary judgment in favor of plaintiff is reversed, and this matter is remanded for further proceedings.

Reversed and remanded.

DUNN and WOODWARD, JJ., concur.