FRANK L. AVERY, Appellee, *vs.* THE CITY OF CHICAGO *et al.* Appellants.

*Opinion filed October 23, 1931.*

CHAPMAN & CUTLER, and DAVID D. STANSBURY, (CHARLES M. THOMSON, of counsel,) for appellant the Midwest Trading and Securities Corporation; MILLER, GORHAM & WALES, for appellant George K. Schmidt; THOMAS MARSHALL, for appellant Charles S. Peterson; FRANCIS X. BUSCH, Corporation Counsel, (MARTIN H. FOSS, CARL J. APPELL, JOHN G. DRENNAN, and JOSEPH R. ROACH, of counsel,) for the city of Chicago and other appellants.

JOHN J. HEALY, and CHESTER E. CLEVELAND, for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Frank L. Avery, a citizen and tax-payer, filed a bill and later a supplemental bill in the circuit court of Cook county against the city of Chicago, the Midwest Trading and Securities Corporation, and Arnold H. Kegel, Charles S. Peterson and George K. Schmidt, respectively the commissioner of health, the treasurer and the comptroller of the city. The relief sought was (1) an adjudication that a certain ordinance and a resultant contract between the city and the trading corporation for the removal and disposition of dead animals and of cut meats, fish and poultry condemned by the health department of the city was void; (2) an injunction prohibiting the payment of any claim for services rendered pursuant to that contract and (3) a decree charging the defendant city officers with personal liability for such payments, if made. Two answers were filed, one by the city and its officers and the other by the Midwest Trading and Securities Corporation. After a hearing, the circuit court entered a decree declaring the ordinance and the contract void, enjoining the defendants from carrying out the contract, and requiring the corporation to refund the sum of $46,666.64 which the city had paid and to return a warrant

for $5833.33 which the city had delivered to it under the contract. The city was directed to pay the complainant's expenses, including solicitor's fees, out of the money so to be refunded and jurisdiction was reserved later to determine the amount of such expenses. From that decree this appeal is prosecuted, the chancellor having certified that the validity of a municipal ordinance is involved in the case and that in his opinion the public interest required that the appeal should be taken directly to this court.

Frank L. Avery, the appellee, was the superintendent of the Canal Melting Company which, for sixteen years prior to February 1, 1928, had successive contracts with the city of Chicago for the removal of dead animals from the streets and other public places of the city. The periods of time for which these contracts were made varied, but all exceeded one year, and the term of the last contract was approximately two and one-half years. The commissioner of health, pursuant to authority conferred by a general ordinance of the city, on January 3, 1928, advertised for bids or proposals to remove and dispose of dead animals and condemned meats after February 1, 1928, the date of the expiration of the existing contract. At the time fixed for opening the bids, the Canal Melting Company was the sole bidder; it asked $80,000 per year under a five year contract and $85,000 in case the contract should be limited to one year. The bid was rejected. The commissioner of health, by a second advertisement, sought new bids and two were submitted. The Canal Melting Company repeated the same figures for terms of one and five years but added the proposal of $82,500 a year under a contract for three years. The other bid was by the Aurora By-Products Company and it asked $84,000, $81,000, and $74,000 per year under contracts for one year, three years and five years respectively. These bids also were rejected. No further advertisement for bids was made, but the service which the Canal Melting Company had rendered was continued, by

authority of an order of the city council, from February 1, 1928, when the company's last contract expired, until June, 1928, and the city paid for that service at the rate of $85,000 per year.

In May, 1928, the Midwest Securities and Trading Corporation, which was organized under the laws of Delaware on August 31, 1927, submitted a bid to the commissioner of health offering, upon the specifications which had served as the basis for the earlier bids, to do the work under a contract for five years at $70,000 per year, payable in equal monthly installments. The commissioner transmitted the bid to the city council and that body authorized him to accept it and, on the city's behalf, to enter into a contract with the bidder. On the same day, May 28, 1928, the council passed an ordinance appropriating $40,850 to defray the expense of the proposed service during the remainder of the fiscal year. The vote on the passage of this ordinance, recorded in the journal of the proceedings of the city council, was forty-three yeas and no nays, and the ordinance was approved by the mayor and published in a newspaper. The commissioner of health, on June 2, 1928, by authority of the council's order, entered into the contract with the Midwest Securities and Trading Corporation.

On June 30, 1928, the appellee filed his original bill in this case. He charged, among other things, that the contract was void; that the company with which the city had contracted was a foreign corporation and that it had not been licensed to do business in this State. Thereafter, on July 3, 1928, the name of the corporation was changed to Midwest Trading and Securities Corporation and on July 6, 1928, the corporation was authorized "to manufacture, purchase, acquire, deal or trade in goods, wares, products and merchandise" in this State.

The contract of June 2, 1928, was abrogated and on July 11, 1928, the city council passed an ordinance authorizing the commissioner of health, without advertising for

bids, to enter into a contract, on behalf of the city, with the Midwest Trading and Securities Corporation for the collection, removal and disposition by the latter, during the ensuing term of five years, of all dead animals found in the public places of the city, all dogs killed at the city pound and all carcasses of animals, cut meats, fish and poultry condemned by the department of health, the compensation for the service specified to be $70,000 annually, payable by the city in monthly installments of $5833.33 each. The comptroller and city treasurer were directed by the ordinance to pass for payment the requisite vouchers when properly approved by the commissioner of health; and all conflicting ordinances were repealed. The vote on the passage of the ordinance was taken by yeas and nays and entered on the journal of the proceedings of the city council. The result of the vote was yeas forty-five, and nays none, and the mayor approved the ordinance July 16, 1928.

The ordinance was followed by a contract dated July 12, 1928. The Midwest Trading and Securities Corporation, by the contract, undertook to furnish, at its own expense, all the equipment and labor required to perform the work specified in the ordinance; to keep and maintain proper depots for the reception of the dead animals at places designated by the commissioner of health; to remove the bodies for disposition to plants more than three miles beyond the city limits; to be responsible for all violations of the laws and ordinances and for other delinquencies; to do all the work under the contract in accordance with the ordinances of the city and the specifications prepared by the commissioner of health, and not to assign the contract without the latter's consent. The contract provided that "All such work shall continue for the period beginning July 12, 1928, up to and including July 12, 1933, subject to annual appropriations for the purposes indicated." The city agreed to pay the company "at the rate of $70,000 per year for the period from July 12, 1928, to July 12, 1933, in monthly install-

ments of $5833.33 each and proportionately for the fractional part of any month, each such installment to become due on the 12th day of every calendar month beginning August, 1928, and to be paid on or before the last day of the month in which the payment falls due." The city also granted the company the sole and exclusive right to receive all the dead animals, the condemned carcasses, cut meats, fish and poultry and the dogs killed at the pound, and to convert to its use all the interest which the city might have in the dead animals.

The Midwest Trading and Securities Corporation possessed no equipment to perform the work specified in the contract. It employed the Municipal Western Removal Company for that purpose. The dead animals were disposed of at a reduction plant outside of the city and hides, glue, non-edible greases and fertilizers were obtained from them. The commissioner of health testified that complaints concerning the service rendered under the contract would be made to him, but that he had received no such complaints.

The supplemental bill was filed on August 27, 1928. The work required by the contract was performed during the period from July 12, 1928, until April 12, 1929. The city issued two warrants to the Midwest Trading and Securities Corporation in payment of the work done. The first was for $5833.33 and the second for $46,666.64. These two warrants equal the sum which accrued under the contract, according to its terms, for the period during which the service was rendered. Payment of the first warrant was stopped, while the second was paid on July 31, 1929.

A reversal of the decree is sought by the appellants upon several grounds. Their primary contention is that the city council had the power to pass the ordinance of July 11, 1928, by which it authorized the contract in question. To sustain a municipal ordinance, it is necessary to point out the statute by which the legislature conferred the power to pass it. (*Arms* v. *City of Chicago,* 314 Ill. 316). Among the

powers expressly granted to the city council in cities and the president and board of trustees in villages by section 1 of article 5 of the Cities and Villages act (Cahill's Stat. 1927, p. 312; Smith's Stat. 1927, p. 336) are the following: Sub-section 12, to provide for the cleansing of streets, alleys, avenues, sidewalks, wharves, parks and public grounds; sub-section 15, to regulate and prevent the throwing or depositing of ashes, offal, dirt, garbage or any offensive matter in, and to prevent injury to, any street, avenue, alley or public ground; sub-section 66, to pass and enforce all necessary police ordinances; sub-section 75, to declare what shall be a nuisance and to abate it; sub-section 78, to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease, and sub-section 102, to pass all ordinances, rules and make all regulations, proper or necessary, to carry into effect the powers granted.

A municipal corporation may derive its powers concerning a particular subject from several sub-sections of section 1 of article 5 of the Cities and Villages act. (*City of Chicago* v. *Green Mill Gardens,* 305 Ill. 87; *Consumers Co.* v. *City of Chicago,* 313 id. 408). A city's express powers respecting streets, public places, the promotion of health and the suppression of disease authorize it to enter into a contract for the removal and disposition of condemned meats and dead animals. Section 2 of article 7 of the Cities and Villages act, however, requires the city council, within the first quarter of each fiscal year, to pass the annual appropriation bill, and section 4 of the same article provides that no contract shall be made by the city council, a committee or member, nor shall any expense be incurred by any of the officers or departments of the corporation, whether the object of the expenditures shall have been ordered by the city council or not, unless an appropriation shall have been previously made concerning such expense. The two statutory requirements respecting an

appropriation, the first that it shall be made annually and the second that it must precede the incurring of a debt or expense, are limitations upon the power of a city council to enter into a contract. If the contract under review created an obligation on the city's part to continue throughout the period of five years, the power to make a previous appropriation sufficient to meet the expense during the whole term was wanting, and in the absence of an enabling statute authorizing a contract concerning the subject matter for a period longer than one year, the city of Chicago had no power to enter into such a contract imposing an obligation for five years. *Consumers Co.* v. *City of Chicago, supra.*

To sustain the contract in question which fixed the term for the rendition of the stipulated service at five years, the appellants invoke the act entitled "An act to authorize cities of a certain class to make contracts for a period exceeding one year relating to the collection and final disposition of garbage," (Cahill's Stat. 1927, p. 415; Smith's Stat. 1927, p. 458). Section 1 of the act empowers any city having a population in excess of one hundred thousand inhabitants to make contracts relating to the collection and final disposition of garbage and ashes for periods of more than one year and not exceeding five years. Whenever a city enters into such a contract, the second section of the act makes it the city council's duty to include in the annual appropriation ordinance for the current fiscal year an appropriation of a sum of money sufficient to pay the amount which, by the terms of the contract, will become due and payable during that year. The appellants argue that the legislature used the word "garbage" in this act in its most comprehensive import and intended it to include dead animals. Statutes granting powers to a municipal corporation are strictly construed and a reasonable doubt concerning the extent of the power conferred or an ambiguity arising out of the grant is resolved against the municipality which claims to exercise the power. (*Forest Preserve District* v.

*Jirsa,* 336 Ill. 624; *Washburn* v. *Forest Preserve District,* 327 id. 479). Garbage has been defined as any worthless, offensive matter in *St. Louis* v. *Robinson,* 135 Mo. 460; as refuse organic matter in general in *State* v. *Flanigan,* 111 Md. 481; as refuse parts of flesh in the case of *In re Lowe,* 54 Kan. 757, and as the refuse animal and vegetable matter from a kitchen in *Dupont* v. *District of Columbia,* 20 App. (D. C.) 477. Webster's definition of the word is "Offal, as the entrails of an animal or fish; refuse animal or vegetable matter from a kitchen, market, or store; often, loosely, waste material from a house, market or store, consisting of offal mixed with other refuse, as ashes, paper, tin cans, etc.; hence anything worthless or filthy; refuse." None of these definitions is sufficiently comprehensive to include dead animals. If the legislature had intended to confer upon a city of the prescribed population the power to make contracts for the removal and disposition of such bodies for periods longer than one year and not exceeding five years, it would undoubtedly have expressed that intention. The rule of strict construction which governs statutes granting powers to municipal corporations forbids an interpretation of the statute upon which the appellants rely to comprehend dead animals. The statute they invoke did not authorize the contract in question.

The further contention is made by the appellants, however, that even if a contract for the removal and disposition of dead animals and condemned meats during the period of five years was not within the statutory power of the city, yet the contract was not void on that account but was severable, and voidable as to the part which had not been performed. A municipal corporation is bound only when its agents or officers, by whom alone it can act, keep within the limits of the chartered authority of the corporation. Dillon well said (Mun. Corp. 5th ed. sec. 791): "The history of the workings of municipal bodies has demonstrated the salutary nature of this principle, and that it is the part

of true wisdom and of judicial duty to keep the corporate wings clipped down to the lawful standard." A contract relating to matters wholly outside of the chartered or legislative power of a municipal corporation is *ultra vires* and void and the corporation is not estopped, in an action on such a contract, to interpose that defense. (Dillon on Mun. Corp. 5th ed. sec. 1610). A contract in respect of a matter within the scope of the general power of a municipal corporation, however, may be invalid because the power was irregularly exercised. In such a case the contract would not be *ultra vires* in the true sense of that phrase; and in an action by a *bona fide* contractor who had expended money or parted with value for the benefit of the municipality, the latter would be estopped to set up as a defense its own irregularities in the exercise of a power clearly granted to it. Dillon on Mun. Corp. 5th ed. sec. 1611; *Mc-Govern* v. *City of Chicago,* 281 Ill. 264.

The exercise of power in the present case was irregular or excessive in respect of the term and not the subject matter of the contract. To enter into a contract for the stipulated service for a period not longer than one year was within the scope of the city's power. The city enjoyed the benefit of that service from July 12, 1928, until April 12, 1929, and paid for the work during the period it was performed, namely, nine months, at the rate fixed by the contract. Apparently this rate was not excessive, first, because it was substantially lower than the compensation asked for the same service by the Canal Melting Company, and second, because it was based upon the assumption that the service would be rendered during the period of five years which, as appears from the bids submitted by the company last named, effected a lower annual charge than the compensation that would be demanded under a contract for a single year. The evidence shows that no complaint was made concerning the character of the service rendered. There was no showing of fraud, exorbitant charge or lack of good

faith in obtaining the execution or in the performance of the contract. The objection that the contract is invalid because the term for which it was made is excessive should therefore extend to the executory and not the executed part of it.

The appellee answers that the contract was void from its inception because, prior to its execution, the city council failed to make an appropriation of a sum sufficient to meet the aggregate of the monthly installments which, during the five year term of the contract, would accrue under it. The statutory requirement that no contract shall be made by a municipality without a previous appropriation to liquidate the liability created thereby is imposed for the purpose of protecting the municipal treasury against the incurring of liabilities which exceed the appropriation or for which none has been made. The requirement is mandatory and if a contract is entered into without complying with it, the contract is void, and there can be no recovery thereon. Dillon on Mun. Corp. 5th ed. sec. 790; *DeKam* v. *City of Streator,* 316 Ill. 123; *May* v. *City of Chicago,* 222 id. 595.

It appears that the fiscal year of the city of Chicago begins on the first day of January. While section 2 of article 7 of the Cities and Villages act requires the city council to pass the annual appropriation bill within the first quarter of each fiscal year, the same section further provides that in cities and villages having a population of one hundred thousand or more, the city council or board of trustees, at any time within the first half of the fiscal year, by a two-thirds vote of all the members of such body, may pass additional or supplemental appropriation ordinances making appropriations from any receipts derived from sources other than the annual tax levy. Within the time prescribed by section 2, and before the contract in question was entered into, the city council appropriated $40,850 to defray the cost and expense of the proposed service during the remainder of the current fiscal year. The council had

no power at the time to make an appropriation to discharge a liability which would accrue after that year expired. Provision to pay the obligation imposed upon a city by a contract running for a period of years, when valid because authorized by statute, is not made by a single precedent appropriation for the whole term, but by successive proportionate annual appropriations. When the present contract was made the parties recognized this limitation for the contract expressly provides that the work shall continue for the period defined "subject to annual appropriations for the purposes indicated."

Neither the original nor the supplemental bill contains an allegation that the city council made no appropriation in 1929 to pay the expense of doing the work specified in the contract during that year. The appellee offered no evidence upon the subject. If he desired to present that issue he should have made the appropriate allegation in his bill and supported it by evidence. In the absence of such allegation and proof, it must be presumed that the appropriation was made. The sum of the two warrants issued to the Midwest Trading and Securities Corporation did not exceed the sum of the monthly installments which accrued during the period of nine months that the service was actually rendered. There is neither charge nor proof that appropriations to defray the prescribed compensation for the executed part of the contract, the subject matter of which was within the city's power, were not successively made.

It is further contended by the appellee that the ordinance passed July 11, 1928, which authorized the commissioner of health to enter into the contract, was a proposition to create a liability against the city; that the ordinance is void because it was not passed by a separate yea and nay vote and that the entries in the journal of the city council showing the contrary are not conclusive evidence upon that question. The appellee endeavored to show that the yeas and nays had been taken jointly upon a number of measures,

including the ordinance in question, and he called the reading clerk of the city council for that purpose, but the latter's testimony failed to establish that such was the fact. Moreover, the testimony was incompetent and therefore inadmissible. Section 12 of article 3 of the Cities and Villages act requires the city council to keep a journal of its proceedings. The next section provides that the yeas and nays shall be taken upon the passage of all ordinances and on all propositions to create any liability against the city or for the expenditure or appropriation of its money, and that the yeas and nays shall be entered on the journal of the council's proceedings. Section 10 of article 6 of the same act provides that the city clerk shall attend all meetings of the city council and keep a full record of its proceedings in the journal. A record of the proceedings of a municipal body made pursuant to law is the only lawful evidence of its action and cannot be explained, enlarged or contradicted by parol evidence. (*Village of Bellwood* v. *Galt*, 321 Ill. 504; *City of Belleville* v. *Miller*, 257 id. 244; *City of Paxton* v. *Bogardus*, 201 id. 628). The city council had a membership of fifty and it appears from the journal of its proceedings that the vote on the passage of the ordinance was taken by yeas and nays and that the result of the vote was forty-five yeas and no nays. The council's official record of its proceedings shows compliance with the statutory requirements respecting the passage of the ordinance and the contention that it is void because it was not passed by a separate yea and nay vote cannot be sustained.

The appellee, upon cross-errors assigned, complains that the circuit court erred in refusing to find, first, that the Midwest Trading and Securities Corporation had no charter or corporate power to enter into the contract with the city, and second, that the company had no right to assign the contract or to permit another to perform it. The question of *ultra vires* may be raised only by the State or by a party who has suffered the invasion of some right by the trans-

gression of corporate power. The State, from which the powers of a corporation are derived, is interested in preventing the perversion and usurpation of its franchises. A stockholder, to enforce his contract of membership, may restrain the corporation within the limits of the enterprise for which it was organized. The appellee has no interest in the Midwest Trading and Securities Corporation and he is a stranger to the contract which invites his objection. He merely avers that the contract is beyond the corporate powers of the company. A violation of the corporate charter does not of itself injuriously affect any of the appellee's rights and he has, for that reason, no ground for complaint. *New Orleans, Mobile and Texas Railroad Co.* v. *Ellerman,* 105 U. S. 166; *Golconda Northern Railway* v. *Gulf Lines Connecting Railroad,* 265 Ill. 194.

The answer to the contention that the Midwest Trading and Securities Corporation had no right to assign the contract is that the record fails to show that the contract was ever assigned. The service which was the subject matter of the contract was performed during the period of nine months without complaint by the city. The objection that the Municipal Western Removal Company was employed by the Midwest Trading and Securities Corporation to do the work did not relieve the latter from its obligation to the city, and the objection is not available to the appellee.

The foregoing disposition of the controlling questions in the case makes unnecessary the consideration of other contentions urged by the respective parties. The circuit court properly enjoined the appellants from carrying out the executory part of the contract, but the right to a decree requiring the return to the city of the first warrant, the refunding of the money paid on the second warrant and the payment of the appellee's expenses was not established.

The decree of the circuit court is reversed and the cause is remanded to that court with directions to enter a decree in conformity with this opinion.

*Reversed and remanded, with directions.*