NOTICE

Decision filed 08/09/19. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2019 IL App (5th) 180439

NOS. 5-18-0439, 5-18-0440, 5-18-0441, 5-18-0442 CONS.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| THE CITY OF CENTRALIA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 17-MR-54 |
| | ) | |
| DOYLE GARLAND, | ) | Honorable |
| | ) | Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

| THE CITY OF CENTRALIA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 17-MR-57 |
| | ) | |
| MATTHEW MANFUCCI, | ) | Honorable |
| | ) | Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

| THE CITY OF CENTRALIA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 17-MR-59 |
| | ) | |
| JAY O'BRIST, | ) | Honorable |
| | ) | Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

| THE CITY OF CENTRALIA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 17-MR-60 |

|                                      | )   |                        |
|--------------------------------------|-----|------------------------|
| SCOTT PRIES and JANET PRIES,         | )   | Honorable              |
|                                      | )   | Michael D. McHaney,    |
| Defendants-Appellants.               | )   | Judge, presiding.      |

JUSTICE MOORE delivered the judgment of the court, with opinion.
Presiding Justice Overstreet and Justice Boie concurred in the judgment and opinion.

## OPINION

¶ 1    In this consolidated appeal, the defendants in each of the cases below appeal the August 10, 2018, orders of the circuit court of Marion County that, *inter alia*, granted the motions for summary judgment in favor of the City of Centralia (City) on the City's complaints for removal of the defendants' boat docks from Lake Centralia. On appeal, the defendants argue that the circuit court erred in granting the summary judgments in favor of the City because a question of material fact exists as to whether the City has extraterritorial jurisdiction to acquire, retain ownership of, and regulate Lake Centralia. During the course of this appeal, the City filed a motion requesting that this court take judicial notice of certain public records, which this court ordered to be taken with the case. In their reply brief, the defendants request this court take judicial notice of other public records. For the following reasons, we grant the City's motion and the defendants' request to take judicial notice of the respective public records and affirm the judgments of the circuit court.

¶ 2                                    FACTS

¶ 3    On April 28, 2017, the City filed complaints against the defendants requesting an order allowing the City to remove the defendants' boat docks from Lake Centralia at the defendants' expense. According to the complaints, the City owns Lake Centralia, and the defendants own adjacent property and boat docks in Lake Centralia. Citing section 20-66 of its municipal code (Centralia Municipal Code § 20-66 (amended Oct. 13, 2015)), the City alleged that the

defendants had failed to register their boat docks or pay the associated annual permit fees for 2016 or 2017.[1] The complaints alleged that the City manager had sent letters to the defendants on or about February 1, 2017, informing them of their failure to register and pay the annual fees and placing them on notice that their docks would be removed at their expense if they did not comply with these requirements. The City requested that the circuit court authorize the City to remove the boat docks in question and order the defendants to reimburse the City for the cost of the removal.

¶ 4    On January 29, 2018, the City filed motions for summary judgment requesting judgment in its favor on each of the complaints. Exhibit A to the City's motions is the request to admit facts that the City had served on the defendants in each underlying case, wherein each defendant admitted that he or she owned the respective boat docks in question and had failed to register the docks or pay the annual fees as alleged in the complaints. Exhibit B to the City's motions is the affidavit of City manager Dan Ramey, in which he avers that the City is a municipal corporation and utilizes Lake Centralia, at least in part, for waterworks and for recreational purposes.

¶ 5    On July 6, 2018, the defendants filed responses to the City's motions for summary judgment. The defendants attached, as exhibits to their responses, the depositions of the City's director of public works, as well as a retired utility superintendent for the City. These witnesses testified as to the history of the City's use of Lake Centralia for waterworks and its work to

---

[1]Section 20-66 of the Centralia Municipal Code provides parameters for the length, construction, maintenance, and inspection of boat docks in Lake Centralia. Centralia Municipal Code § 20-66 (amended Oct. 13, 2015). Subsection (j) of section 20-66 of the Centralia Municipal Code provides, *inter alia*, that, prior to January 1 of each year, the owner of each boat dock shall purchase a boat dock permit. *Id*. § 20-66(j). For each boat dock on the lake that is up to 350 square feet of space, there shall be assessed a fee of $100 annually. For each dock on the lake that is over 350 square feet of space, there shall be assessed a fee of $200 annually. Subsection (e) of section 20-66 of the Centralia Municipal Code provides that "[b]oat docks that have not been registered or the annual fee has not been paid shall permanently be removed from the lake by the owner of the dock. City shall remove all docks that are not registered or approved at the owner's expense." *Id*. § 20-66(e).

maintain the banks of the lake, as well as inspection of the docks and the dam. The witnesses testified that Lake Centralia is, at present, only used as a second backup water source for the City, having not been used for drinking water since the 1980s. The defendants argued in their responses that summary judgments were improper because there are questions of fact as to whether the City has the authority to regulate Lake Centralia.

¶ 6    On August 1, 2018, the defendants filed motions for leave to amend their answer and affirmative defenses, as well as to file counterclaims for a declaratory judgment. The defendants' proposed affirmative defenses and counterclaims are premised on the defendants' argument that Lake Centralia is outside of the city limits and that the City's municipal ordinances purporting to regulate the defendants' boat docks exceed the City's jurisdictional and statutory authority. On August 9, 2018, the circuit court held a hearing on all pending motions, including the defendants' motions for leave to amend and to file counterclaims, as well as the City's motions for summary judgment.

¶ 7    On August 10, 2018, the circuit court entered detailed written orders on the City's motions for summary judgment. After rendering its legal conclusions, to be detailed below, the circuit court ordered that (1) the defendants' motions for leave to file amended answers, amended affirmative defenses, and counterclaims were granted; (2) the City's motions for attorney fees were denied; (3) the City's motions for summary judgment were granted; (4) the City was authorized to remove the boat docks at issue; (5) the cost of removal of the boat docks shall be assessed against the defendants; and (6) the circuit court would retain jurisdiction of these matters for the purpose of entering money judgments against the defendants for the cost of removal of the boat docks. The circuit court entered a finding, pursuant to Illinois Supreme Court

- 4 -

Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason for delaying either enforcement or appeal or both.[2]

¶ 8    On September 10, 2018, the defendants filed notices of appeal. On December 14, 2018, the defendants filed a motion to consolidate the appeals, which this court granted. In their reply brief, the defendants requested this court to take judicial notice of a report of proceedings of the City, which took place in 1893, wherein the City elected to incorporate under an 1872 act to provide for the incorporation of cities and villages (Cities and Villages Act) (1871-72 Ill. Laws 218). On May 22, 2019, the City filed a motion requesting that this court take judicial notice of certified copies of a quitclaim deed, dated August 27, 1926, by which the Centralia Water Supply Company conveyed Lake Centralia to the City, as well as records of the Secretary of State showing that Centralia Water Supply Company dissolved on November 29, 1926. Neither party has objected to the other's request regarding judicial notice. This court ordered the City's motion for judicial notice to be taken with the case.

¶ 9                                    ANALYSIS

¶ 10    Before turning to the merits of the defendants' appeal, we address the parties' requests that we take judicial notice of the public records indicated above. It is well-established that this court can take judicial notice of matters that are readily verifiable from sources of indisputable accuracy, such as public records. See *People v. Mata*, 217 Ill. 2d 535, 539-40 (2005) (citing *People v. Henderson*, 171 Ill. 2d 124, 134 (1996)). Neither party disputes that the records that are the subject of the other's request are public records. Accordingly, we grant the defendants'

---

[2]The statement of jurisdiction in the appellants' brief is deficient in that it makes no reference to Rule 304(a), which is the supreme court rule that confers appellate jurisdiction on this court. The orders appealed from dispose of fewer than all of the matters raised in the circuit court in each underlying case, leaving the defendants' counterclaims, as well as the entry of money judgments for the cost of removal of the boat docks, pending. Accordingly, absent the written finding that there is no just reason for enforcement or appeal, this court would not have jurisdiction to consider these appeals.

request, as set forth in their reply brief, that this court take judicial notice of proceedings of the City, taking place in 1893, wherein the City elected to incorporate under the Cities and Villages Act (1871-72 Ill. Laws 218). In addition, we grant the City's motion, which was taken with the case, that this court take judicial notice of the quitclaim deed, dated August 27, 1926, by which the Centralia Water Supply Company conveyed Lake Centralia to the City, as well as records of the Secretary of State showing that Centralia Water Supply Company dissolved on November 29, 1926.

¶ 11    Having resolved the preliminary issues with regard to judicial notice, we move to the standards governing the circuit court's entry of orders granting summary judgments in the City's favor, as well as our standard of review. These standards have been summarized as follows:

"Section 2-1005 of the Code of Civil Procedure provides for summary judgment when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005 (West 2002). The purpose of summary judgment is not to try a question of fact but simply to determine if one exists. [Citation.] In reviewing a summary judgment disposition, this court will construe the record strictly against the movant and liberally in favor of the nonmoving party. [Citation.] Moreover, it must be noted that summary judgment dispositions 'should not be allowed unless the moving party's right to judgment is clear and free from doubt.' [Citation.] If the undisputed material facts could lead reasonable observers to divergent inferences, or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. [Citation.] This court reviews a grant of summary judgment *de novo.*" *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007) (quoting *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998)).

¶ 12  According to public records of which we have taken judicial notice, the City owns Lake Centralia by virtue of a deed transferring the land on which Lake Centralia lies to the City on August 27, 1926. The arguments that the defendants raise on appeal to support their assertion that the circuit court erred in granting summary judgments in favor of the City can be restated as follows: (1) the City is not permitted to own Lake Centralia and so has no right to regulate its boat docks and (2) the City is not permitted to regulate Lake Centralia's boat docks unless Lake Centralia lies within three miles of the City's corporate limits and a determination of Lake Centralia's distance from the City presents a material question of fact precluding the summary judgments against the defendants. We will examine each of these issues in turn.

¶ 13  With regard to the first issue as we have restated it, we recognize the City's argument that the defendants may not challenge its acquisition and continued ownership of Lake Centralia because it is *ultra vires*. In support of this proposition, the City cites *Mills v. Forest Preserve District*, 345 Ill. 503 (1931), wherein our supreme court stated the following rule:

> " ' "Whether a municipal corporation with power to purchase and hold real estate for certain purposes has acquired and is holding such property for other purposes is a question which can only be determined in a proceeding instituted at the instance of the State. If there is a capacity to purchase, the deed to the corporation divests the estate of the grantor and there is a complete sale; and whether the corporation, in purchasing, exceeds its power is a question between it and the State and does not concern the vendor or others." ' " *Id*. at 516 (quoting *Beckett v. City of Petaluma*, 153 P. 20, 22 (Cal. 1915), quoting 3 John F. Dillon, Commentaries on the Law of Municipal Corporations § 990 (5th ed. 1911)).

¶ 14  The defendants, citing *Avery v. City of Chicago*, 345 Ill. 640, 653-54 (1931), which, remarkably, was decided by our supreme court on the same date as the *Mills* decision, argue that

the question of *ultra vires* may be raised not only by the state but may also be raised "by a party who has suffered the invasion of some right by the transgression of corporate power." We find neither *Mills* nor *Avery* controlling as to the defendants' authority to challenge the City's acquisition of Lake Centralia. *Mills* is inapposite because it does not deal with a party's standing to challenge a real estate contract as *ultra vires* in order to defend against enforcement of an ordinance relating to that real estate, which is the situation we confront in the case at bar. Instead, *Mills* confronts the standing of the other party to the real estate transaction to seek recission of the conveyance that was the subject of that transaction. *Mills*, 345 Ill. at 504. It was not the *ultra vires* nature of the transaction in *Mills* that defeated the plaintiff's claim for relief. See *Egidi v. Town of Libertyville*, 218 Ill. App. 3d 596, 604 (1991). Rather, the plaintiff in *Mills* was not entitled to recission of the real estate transaction because he had voluntarily executed the transaction with the municipality and had already reaped the benefits. See *id.* at 604-05. Thus, the plaintiff in *Mills* had no private interest in seeking recission. See *id.* The circumstances in *Mills* bear no relationship to the present action.

¶ 15    As set forth above, we agree with the defendants that *Mills* does not prohibit them from challenging the City's power to acquire and maintain ownership of Lake Centralia. However, *Avery*, which has been cited by the defendants in support of their standing to make such a challenge, does not definitively speak to the issue before us either. In *Avery*, a taxpayer and citizen filed suit to have an executory contract for services, entered into between the City of Chicago and the Midwest Trading and Securities Corporation, declared void because it was for a term longer than one year, which was beyond the City of Chicago's statutory authority. *Avery*, 345 Ill. at 642. The court found that the circuit court was incorrect to invalidate the entire contract, finding that the portion of the contract that was within the one-year time span remained enforceable. *Id.* at 650-51. The court rejected the taxpayer's argument that the entire contract

should be void due to Midwest Trading and Securities Corporation's lack of corporate power to enter into the contract with the city or to assign the contract to another party. *Id.* at 653. In so doing, the court did state that "[t]he question of *ultra vires* may be raised only by the State or by a party who has suffered the invasion of some right by the transgression of corporate power." *Id.* at 653-54. However, the court was referring to the standing of a private citizen to challenge a private corporation's act, rather than the standing to challenge the act of a municipal corporation. *Id.* The court did not speak at all regarding the right to challenge a municipality's ownership of real estate as *ultra vires*.

¶ 16     For the foregoing reasons, we find that neither party's authority on the issue of a citizen's right to challenge the City's acquisition and holding of Lake Centralia is dispositive. However, we are not required to make a determination on this issue should we find the City properly acquired Lake Centralia and has the power under current law to maintain such ownership. Accordingly, we proceed with an examination of whether the City had the power to acquire Lake Centralia in 1926 and whether it has the power to maintain ownership of Lake Centralia under current law.

¶ 17     The circuit court, in its order, cited to article I, section 4, of "An Act to incorporate the City of Centralia" (original incorporating Act) (1859 Ill. Laws 114-15 (§ 4)), adopted by the Illinois General Assembly on February 18, 1859, which authorized the City to purchase, receive, and hold property, both real and personal, outside of the corporate limits for municipal purposes. Although this was the City's original incorporating Act, it is apparent from public records of which we have taken judicial notice that the City elected in 1893 to adopt and incorporate under the provisions of the 1872 Cities and Villages Act (1871-72 Ill. Laws 218). Accordingly, we agree with the defendants that, at the time that the City acquired Lake Centralia in 1926, the City was not operating under its original incorporating Act, but rather, was acting under the Cities and

Villages Act. However, we find this to be a distinction without a difference. Article I, section 10, of the Cities and Villages Act provided as follows:

> "Cities organized under the act shall be bodies politic and corporate, under the name and style of 'City of (name),' and under such name may sue and be sued, contract and be contracted with, acquire and hold real and personal property for corporate purposes, have a common seal and change the same at pleasure, and exercise all the powers hereinafter conferred." 1871-72 Ill. Laws 220 (§ 10).

¶ 18     Based on this broad grant of power to the City to acquire and hold real and personal property for corporate purposes, we find that the City had the power to acquire Lake Centralia from the Centralia Water Supply Company in 1926. Having so found, we must address the defendants' arguments that current provisions of the Illinois Municipal Code prohibit the City from maintaining its ownership of Lake Centralia into the present day. Section 1-1-3 of the Municipal Code (65 ILCS 5/1-1-3 (West 2016)) provides that all existing municipalities that changed their corporate organizations under the provisions of the Cities and Villages Act shall be treated as properly incorporated under the Municipal Code. In addition, section 1-1-4 of the Municipal Code (*id.* § 1-1-4) provides that it applies to all municipalities that are incorporated as provided in section 1-1-3 of the Municipal Code. Thus, the City is subject to the Municipal Code by virtue of these sections.

¶ 19     The defendants contend that sections 11-125-2, 11-129-1, and 11-129-9 of the Municipal Code (*id.* §§ 11-125-2, 11-129-1, 11-129-9) would prevent the City from continued ownership of Lake Centralia if the City ceased using Lake Centralia for "waterworks." According to the defendants, whether the City is currently using Lake Centralia for "waterworks" presents a genuine issue of material fact that precludes the summary judgments in favor of the City. We disagree. Section 11-125-2 of the Municipal Code provides, in relevant part:

"For the purpose of establishing or supplying waterworks and to purchase, extend, improve and operate waterworks, each city or village may go beyond its corporate limits and acquire and hold property by purchase or otherwise ***. The jurisdiction of the city or village to prevent or punish any pollution or injury to the stream or source of water, or to waterworks, extends 20 miles beyond its corporate limits, or so far as the waterworks may extend." *Id.* § 11-125-2.

¶ 20 Section 11-129-1 of the Municipal Code provides that:

"Any municipality with a population of less than 500,000 is authorized, as provided in this Division 129, to build, or purchase, and to operate a waterworks system or water supply system either within or without the corporate limits thereof, and also to improve or extend that system." *Id.* § 11-129-1.

¶ 21 Section 11-129-9 of the Municipal Code provides that:

"In addition to other projects authorized by this Division 129, any municipality with a population under 500,000 may construct or acquire a water-supply system to serve a particular locality within or without its corporate limits or to extend or improve an existing water-supply system for the purpose of serving a particular locality within or without the municipality not theretofore served by its existing system, and may pay the cost thereof by the issuance and sale of revenue bonds of the municipality, payable solely from the revenue derived from the operation of the water-supply system constructed or acquired for that particular locality, or from the revenue derived from the operation of the improvements and extensions of an existing system." *Id.* § 11-129-9.

¶ 22 Pointing to the evidence in the record regarding the City's use of Carlyle Lake and Raccoon Lake as the primary source of water for the City dating back to the 1980s, the defendants suggest that the foregoing sections of the Municipal Code somehow preclude the City

from maintaining ownership of Lake Centralia if it ceases using it for waterworks. We find this argument contains no merit. There is nothing in these sections of the Municipal Code or to be found anywhere in the law that requires the City to relinquish ownership of property it lawfully acquired in 1926. Further, we reject the defendants' argument that the sections of the Municipal Code setting forth the City's power to acquire and hold property for the purposes of waterworks constitute the sole authority of the City to acquire and hold Lake Centralia. The Municipal Code contains the same general grant of power to municipalities to acquire and hold property as the Cities and Villages Act did in 1927. Section 2-2-12 of the Municipal Code states as follows:

> "Cities incorporated under this Code shall be bodies politic and corporate under the name of 'City of (name),' and under that name may sue and be sued, contract and be contracted with, acquire and hold real and personal property for corporate purposes, have a corporate seal, changeable at pleasure, and exercise all the powers hereinafter conferred."
> *Id.* § 2-2-12.

¶ 23 We find that section 2-2-12 of the Municipal Code (*id.*) governs the City's authority to hold Lake Centralia as its property. No further grant of authority is needed. Accordingly, we will proceed to addressing the defendants' arguments regarding the City's power to regulate the boat docks in Lake Centralia. Section 7-4-2 of the Municipal Code provides as follows:

> "All property which (1) is owned by the municipality, and (2) lies outside the corporate limits of the municipality, and (3) does not lie within the corporate limits of any municipality, shall be subject to the ordinances, control, and jurisdiction of the municipality in all respects the same as the property owned by the municipality which lies within the corporate limits thereof." *Id.* § 7-4-2.

¶ 24 The defendants do not contend that there is any genuine issue of material fact as to whether Lake Centralia (1) is owned by the City, (2) lies outside the City's corporate limits, and

(3) does not lie within the corporate limits of any municipality. Accordingly, under the plain language of section 7-4-2 of the Municipal Code, Lake Centralia "shall be subject to the ordinances, control, and jurisdiction of [the City] in all respects the same as the property owned by [the City] which lies within the corporate limits thereof." *Id.* Nevertheless, the defendants argue that section 7-4-2 is inapplicable to the City's regulation of Lake Centralia. Citing *County of Will v. City of Naperville*, 226 Ill. App. 3d 662 (1992), the defendants contend that section 7-4-4 of the Municipal Code (65 ILCS 5/7-4-4 (West 2016)) renders section 7-4-2 inapplicable. In order to determine the propriety of the defendants' arguments, we begin by examining *City of Naperville*.

¶ 25   In *City of Naperville*, the City of Naperville purchased a 40-acre parcel of land in unincorporated Will County. *City of Naperville*, 226 Ill. App. 3d at 662. The parcel met all of the parameters of section 7-4-2 of the Municipal Code (Ill. Rev. Stat. 1989, ch. 24, ¶ 7-4-2) in that it was owned by the City of Naperville, lay outside of its corporate limits, and lay outside the corporate limitations of any municipality. *City of Naperville*, 226 Ill. App. 3d at 662-63. However, the parcel was zoned for agricultural use under Will County's zoning ordinance. *Id.* The city attempted to use its own zoning ordinances to approve its plan to place a fire station on its property. *Id.* Will County brought suit to enjoin the project, arguing that, pursuant to section 5-12001 of the Counties Code (Ill. Rev. Stat. 1989, ch. 34, ¶ 5-12001), the city's use of the land was subject to county zoning ordinances. *City of Naperville*, 226 Ill. App. 3d at 663.

¶ 26   The county argued that because section 7-4-2 of the Municipal Code was a general grant of jurisdiction but did not specifically apply to zoning, the city's power to zone the property constituted an implied power under that statute. *Id.* at 664. However, the county pointed out, section 11-13-1 of the Municipal Code specifically provided that when a county has enacted a zoning ordinance, the city could not zone outside of its corporate limits. Because the power to

- 13 -

zone the property had been explicitly granted to the county by section 5-12007 of the Counties Code and had been explicitly denied to the city by 11-13-1 of the Municipal Code, the county argued that an implied power to zone under section 7-4-2 of the Municipal Code could not exist. *Id.* The *City of Naperville* court agreed, holding that the specific statutory provisions regarding zoning, set forth in the Counties Code and the Municipal Code, were controlling and could not be broadened by reference to the general jurisdictional provisions of section 7-4-2. *Id.*

¶ 27    Having examined the holding of *City of Naperville* and its reasoning, we turn to a comparison of section 7-4-2 of the Municipal Code (65 ILCS 5/7-4-2 (West 2016)), which sets forth the general jurisdiction of power of the City to regulate property that it owns outside of its corporate limits, with section 7-4-4 of the Municipal Code (*id.* § 7-4-4). Section 7-4-4 provides that the City has "jurisdiction over all waters within or bordering upon the municipality, to the extent of 3 miles beyond the corporate limits, but not beyond the limits of the State." *Id.* The defendants argue that because Lake Centralia is a body of water, the jurisdictional provision in section 7-4-4 limits the jurisdictional power section 7-4-2 grants the City over property that it owns outside of its limits. We disagree and find, for the following reasons, that the opposite is true.

¶ 28    Section 7-4-2 of the Municipal Code grants the City the power to regulate all property the City owns and does not exclude bodies of water lying on such property. In contrast, section 7-4-4 grants jurisdiction to the City over waters beyond three miles of its corporate limits, whether or not the City owns the property on which those waters lie. Accordingly, section 7-4-4 of the Municipal Code leaves the City's jurisdiction to regulate Lake Centralia undisturbed because Lake Centralia is owned by the City. As a result, we reject the defendants' argument that whether Lake Centralia lies within three miles of the City's corporate limits constitutes a genuine issue of material fact that would defeat the City's motion for summary judgment.

¶ 29    The defendants make a similar argument regarding the provision in section 11-125-2 of the Municipal Code that states that "[t]he jurisdiction of the city or village to prevent or punish any pollution or injury to the stream or source of water, or to waterworks, extends 20 miles beyond its corporate limits, or so far as the waterworks may extend." *Id.* § 11-125-2. According to the defendants, this section mandates that the only power that the City has to regulate Lake Centralia is for the purpose of preventing or punishing pollution. The defendants argue that whether the boat dock regulations fall under this power to regulate pollution is a material question of fact precluding the summary judgments in favor of the City. However, this argument fails for the same reason as the argument relating to section 7-4-4 of the Municipal Code. Section 7-4-2 of the Municipal Code grants the City the power to regulate all property the City owns and does not restrict the subjects upon which the City can regulate. It is the City's ownership of Lake Centralia that gives the City the power to regulate Lake Centralia, and the City's ownership is established by the record. Accordingly, the summary judgments in favor of the City were proper.

¶ 30                                CONCLUSION

¶ 31    For the foregoing reasons, we grant the City's motion and the defendants' request that this court take judicial notice of public records and affirm the judgments of the circuit court.

¶ 32    Affirmed.

2019 IL App (5th) 180439
NOS. 5-18-0439, 5-18-0440, 5-18-0441, 5-18-0442 CONS.
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

| THE CITY OF CENTRALIA, | ) | Appeal from the Circuit Court of Marion County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 17-MR-54 |
| DOYLE GARLAND, | ) | Honorable Michael D. McHaney, Judge, presiding. |
| Defendant-Appellant. | ) | |

_____

| THE CITY OF CENTRALIA, | ) | Appeal from the Circuit Court of Marion County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 17-MR-57 |
| MATTHEW MANFUCCI, | ) | Honorable Michael D. McHaney, Judge, presiding. |
| Defendant-Appellant. | ) | |

_____

| THE CITY OF CENTRALIA, | ) | Appeal from the Circuit Court of Marion County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 17-MR-59 |
| JAY O'BRIST, | ) | Honorable Michael D. McHaney, Judge, presiding. |
| Defendant-Appellant. | ) | |

_____

| THE CITY OF CENTRALIA, | ) | Appeal from the Circuit Court of Marion County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 17-MR-60 |
| SCOTT PRIES and JANET PRIES, | ) | Honorable Michael D. McHaney, Judge, presiding. |
| Defendants-Appellants. | ) | |

_____

**Opinion Filed:**        August 9, 2019

_____

**Justices:**        Honorable James R. Moore, J.
                     Honorable David K. Overstreet, P.J., and
                     Honorable Mark B. Boie, J.
                     Concur

| | |
|---|---|
| **Attorney for Appellants** | B. Jay Dowling, Clayborne Sabo and Wagner LLP, 525 West Main Street, Suite 105, Belleville, IL 62220 |
| **Attorneys for Appellee** | Douglas C. Gruenke, John P. Long, Bruckert, Gruenke & Long, P.C., 201 East Hanover, New Baden, IL 62265 |